# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN

JOSEPH SURMAN,

          Plaintiff,                     Hon. Richard Alan ENSLEN

vs.                                      Case No. 1:06 CV 0312

JANE BARAGAR, CHERYL L            **PLAINTIFF'S SUPPORTING BRIEF IN OPPOSITION TO DEFENDANT CHERYL L. STERLING'S MOTION FOR JUDGMENT ON THE PLEADINGS**

STERLING, and KATHY PALKA,
          Defendants.

_____/

Roger W. Boer (P10926)
Attorney for Plaintiff
**ROGER W. BOER, PLLC**
161 Ottawa Ave., N.W.
Suite 502-D
Grand Rapids, MI  49503
(616) 742-1000


Karen M. Boer (P51276)
Mikhail Albuseiri (P56529)
Co-Counsel for Plaintiff
**ALBUSEIRI & BOER, P.C.**
161 Ottawa Ave., N.W.
Suite 206
Grand Rapids, MI  49503
(616) 459-0799


Mark F. Haslem (P45432)
Co-counsel for Plaintiff
**MARK F. HASLEM, P.C.**
220 Lyon Sq., N.W.
Suite 450
Grand Rapids, MI  49503

(616) 742-6732

Joel E. Krissoff (P16248)
Michelene B. Pattee (P48003)
Attorneys for Def. Sterling
**FARR OOSTERHOUSE & KRISSOFF**
125 Ottawa Ave., N.W.
Suite 333
Grand Rapids, MI  49503
(616) 459-3355


Eugenie B. Eardley (P48615)
Attorney for Defendant Baragar
**EARDLEY LAW OFFICES, P.C.**
P.O. Box 830
Cannonsburg, MI  49317-0830
(616) 874-2674


Karl W. Butterer, Jr. (P51448)
Attorney for Defendant Palka
**SMITH HAUGHEY RICE & ROEGGE**
250 Monroe Ave., N.W.
Suite 200
Grand Rapids, MI  49503
(616) 774-8000

_____


## STATEMENT OF FACTS

Plaintiff will furnish all facts relevant to the legal issues before this Court in

the Analysis section below.


## ANALYSIS

**A.**     **Rule 12(b)(6) Standard**

Defendant Cheryl L. Sterling's motion identifies and relies on Rule 12(b)(6)

2

of the Federal Rules of Civil Procedure - failure to state a claim upon which relief

can be granted – as the authority of her underlying motion.  This Court has noted

the following comprehensive set of applicable rules that this Court employs in

reviewing a Rule 12(b)(6) motion:

> A motion to dismiss for failure to state a claim upon which relief may be
> granted tests the sufficiency of the pleadings.  Rule 12(b)(6); see Miller v.
> Currie, 50 F.3d 373, 375 (6th Cir. 1995).  Under Rule 12(b)(6), a complaint
> may be dismissed for failure to state a claim if 'it appears beyond doubt
> that the plaintiff can prove no set of facts in support of his claim which
> would entitle him to relief.'  Conley v. Conley v. Gibson, 355 U.S. 41, 45-
> 46 (1957); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In
> reviewing such a motion, '[t]he complaint must be construed in the light
> most favorable to the plaintiff, and all well-pleaded facts must be accepted
> as true.' Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)
> (citing Scheuer v. Rhodes, 416 U.S. 232, 235 (1974)).  While it is liberal,
> this standard of review does require more than the bare assertion of legal
> conclusions.  Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d
> 1236, 1240 (6th Cir. 1993).  A complaint must contain either direct or
> inferential allegations with respect to all the material elements necessary
> to sustain a recovery under some viable legal theory.  Id.; see also
> Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (legal
> conclusions and unwarranted factual inferences are not accepted as true
> under Rule 12(b)(6) review); Ana Leon T. v. Federal Reserve Bank, 823
> F.2d 928, 930 (6th Cir. 1987) ("Allegations must be more than mere
> conclusions, or they will not be sufficient to state a civil rights claim.").

Organic Chemicals Site PRP Group v. Total Petroleum, Inc.,  6 F.Supp.2d 660,

662 (1998).  As will be elaborated upon below, under this standard, Defendant

Sterling's motion fails to show that dismissal is warranted.

**B.**   **42 USC ß1983**

**Applicable Law.**

*a.*   *Stating A Claim for Relief Under 42 USC §1983.*

It is well established that "[a] [42 USC] §1983 claim must embody at least

two elements: 1) the deprivation of a right secured by the Constitution or laws of

the United States; and 2) the deprivation was caused by a person acting under color of state law." Simescu v. Emmett County Department of Social Services, 942 F.2d 372 (6th Cir. 1991), citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155 (1978) and Nishiyama v. Dickinson County, Tennessee, 814 F.2d 277, 279 (6th Cir. 1987).

This jurisdiction acknowledges that the U.S. Supreme Court also recognizes "the joint action" test as an analytical tool to determine "whether the challenged conduct may be fairly attributable to the state in order to hold the defendants liable under Section 1983." See specifically Canter v Hardy, 188 F.Supp.2d 773, 795 (E.D. Mich. 2002), citing Dennis v. Sparks, 449 U.S. 24, 27 (1980) and Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); see also Tahfs v. Proctor, 316 F.3d 584, 590-591 (6th Cir. 2003), citing Adickes, supra, at 152 and Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Plaintiff submits that a close review of Sparks, supra, is instructive to the allegations raised by Plaintiff:

> [T]o act "under color of" state law for §1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting see "under color" of law for purposes of §1983 actions. Adickes v. S.H. Kress & Co, 398 U.S. 144, 152 (1970); United States v. Price, 383 U.S. 787, 794 (1966). Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge. But here the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge. Under these allegations, the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability. Immunity does not change the character of the judge's action or that of his co-conspirators. Indeed, his immunity is dependent on the challenged

4

> conduct being an official judicial act within his statutory jurisdiction, broadly construed.  Stump v. Sparkman, 435 U.S. 349, 356 (1978); Bradley v. Fisher, supra at 352, 357.  Private parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law within the meaning of ß 1983 as it has been construed in our prior cases. The complaint in this case was not defective for failure to allege that the private defendants were acting under color of state law, and the Court of Appeals was correct in rejecting its prior case authority to the contrary.

Dennis v Sparks, 449 U.S. 24, 28-29 (1980) (internal footnotes omitted).

Moreover, a §1983 action may be maintained under a joint action theory where it is alleged that the private defendants conspired with only one state actor, a state judge who was not party to the proceedings and otherwise enjoyed absolute immunity.  See Ballard v. Wall, 413 F.3d 510, 519 (5th Cir. 2005).

b.      Pleading Requirement – Joint Action Theory.

The Sixth Circuit has held that the pleading requirement set forth by Fed. R. Civ. P. 8(a) is applicable to §1983 claims based on joint action; therefore, a heightened pleading requirement is not triggered when joint action is alleged. See Tahfs v. Proctor, 316 F.3d 584, 591-592 (6th Cir. 2003).  In Proctor, supra, the Court was expressly concerned with the sufficiency of the allegations in a complaint based on 42 USC §1983 that alleged that two private actors had acted in concert with some unidentified circuit court staff in the issuance of a personal protection order.  Id. at 588.  Warning that general allegations of corruption are insufficient to meet the liberal standard of Rule 8(a) of the Federal Rules of Civil Procedure, the Court in Proctor, supra, rendered these - while fact-specific to Proctor -  instructive observations summarized below:

5

The private-actor defendants must have sought the assistance of the state court in bad faith, with an improper purpose, or with the knowledge that the urged and anticipated court involvement/participation, e.g., issuance of "an *ex parte* restraining order" as sought by the private-actor defendants, would be unconstitutional.  Id. at 591, citing Louisville Area Inter-Faith Comm for United Farm Workers v Nottingham Liquors, Ltd, 542 F.2d 652 (6th Cir. 1976).

The plaintiff's allegation of corruption is insufficient to meet the Rule 8(a) standard where the plaintiff is unable to identify the circuit court staff members who allegedly acted in concert with the defendants and where the plaintiff is not alleging that the trial judge who issued the restraining order conspired with the defendants.  Id. at 592.

It is unlikely that a complaint that fails to identify and name the conspiring state officers can be sufficiently rectified through additional facts where the plaintiff is challenging *outcomes* (or adverse court rulings) as opposed to challenging *behavior*.  Id. (emphasis in original).

6

c.    *Fundamental Federal Liberty Interest.*

It is well established in our society and nation that parents' prerogative to make decisions regarding the care and custody of their own children is a fundamental liberty interest protected under the Due Process Clause of the Fourteenth Amendment, U.S. Const. Amendment XIV. Troxel v. Granville, 530 U.S. 57, 65 (2000). In fact, the Supreme Court has stressed that the Due Process Clause "also includes a substantive component that 'provides <u>heightened</u> protection against government interference with certain fundamental rights and liberty interests.'" Id. (emphasis added), quoting Washington v. Glucksberg, 521 U.S. 702, 720 (1997); and citing Reno v. Flores, 507 U.S. 292, 301-302 (1993). The Troxel Court detailed its historically consistent recognition of this fundamental liberty interest:

> The liberty interest at issue in this case-the interest of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in <u>Meyer v. Nebraska</u>, 262 U.S. 390, 399 (1923), we held that the 'liberty' protected by the Due Process Clause includes the right of parents to 'establish a home and bring up children' and 'to control the education of their own.' Two years later, in <u>Pierce v. Society of Sisters</u>, 268 U.S. 534-535 (1925), we again held that the 'liberty of parents and guardians' includes the right 'to direct the upbringing and education of children under their control.' We explained in Pierce that '[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.' <u>Id</u>. at 535. We returned to the subject in <u>Prince v. Massachusetts</u>, 321 U.S. 158 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." <u>Id</u>. at 166. In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, e.g.

> Stanley v. Illiniois, 405 U.S. 645, 651 (1972) ('It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'" (citation omitted)); Wisconsin v. Yoder, 406 U.S. 205, 232 (1972) ('The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition'); Quilloin v. Walcott, 434 U.S. 246, 255 (1978) ('We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected'); Parham v. J.R., 442 U.S. 584, 602 (1979) ( 'Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course'); Santosky v. Kramer, 455 U.S. 745, 753 (1982) (discussing '[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child'); Glucksberg, supra, at 720 ('In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the righ[t] ___ to direct the education and upbringing of one's children' (citing Meyer and Pierce)).

Id. at 65-66.

In the same vein as Troxel and pertinent to the present matter before this Court, the Tenth Circuit has held that a parent's right to determine and control his or her child's medical care and treatment also falls within the same sphere of protected liberty ensured by the Due Process Clause of the Fourteenth Amendment.  Dubbs v. Head Start, Inc., 336 F.3d 1194, 1203 (10th Cir. 2003), citing Cruzan v. Director, Missouri Department of Health, 497 U.S. 261, 278 (1990) and Troxel, supra.

**Discussion.**

At the outset, Plaintiff submits that his Complaint sufficiently alleges state actorship by way of concerted actions between at least one state official and the

8

named private Defendants herein.  Specifically, the Complaint states that

Newaygo County Circuit Court Judge Graydon W. Dimkoff of the Family Division

was a state official and state actor at all times pertinent to the present action

before this Court (Complaint at ¶113).  Moreover, Plaintiff's pleading specifically

alleges that Judge Dimkoff acted in concert with the named Defendants to

deprive Plaintiff of his civil and constitutional rights:

> Dimkoff, J. is a circuit judge for Newaygo County in the State of
> Michigan and as such, he is a state actor and a co-actor with
> Defendant Baragar, Defendant Sterling and Defendant Palka in the
> violation of Plaintiff's civil and constitutional rights.

(Complaint at ¶113).  The Complaint further alleges that the conspiracy revolved

around the circuit court's establishment of the legal fiction (under Michigan law)

of "expanded parenting time" that resulted in the deprivation of fundamental and

important federal rights to Plaintiff (Complaint at ¶134).  Having provided general

notice of the specific theory of liability for its ß1983 claim (i.e., joint action theory),

Plaintiff's Complaint states with specificity the concerted action between Judge

Dimkoff and the named defendants herein.

As the Complaint makes plain, seeking the issuance of the August 9,

2005, ex parte order for temporary custody (masquerading as "expanded

parenting time") was the first of a number of chicaneries implemented by

Defendant Baragar and Defendant Sterling for the purposes of taking away

custody of Nick and Emily from Plaintiff (Complaint at ¶¶ 27-29).  To further their

scheme and common purpose of depriving Plaintiff of physical custody over his

two minor children, Defendants Baragar and Sterling enlisted the services of a

limited licensed psychologist, Defendant Palka.  Moreover, Judge Dimkoff

became instrumental in furtherance of the named Defendants' goal to maintain

and continue the legal fiction of "expanded parenting time", bestowed onto

Defendant Baragar in derogation of Michigan's child custody laws by Judge

Dimkoff.  In active furtherance of Defendants' goal, Judge Dimkoff acted as

follows, as previously pled with specificity:

> On August 9, 2005, Defendant Sterling, as attorney for Defendant Baragar, sought the issuance of an ex parte order from Judge Dimkoff on the strength of a CPS Report that Michigan law required to remain confidential and prohibited from publishing or furnishing to third parties (Complaint at ¶¶117-118).  Judge Dimkoff then issued an ex parte order robbing Plaintiff of his custodial rights to Nick and Emily and awarding Defendant Baragar "expanded parenting time", which represents a legal fiction in Michigan because it circumvents the strict requirements Michigan's Child Custody Act of 1970.

> On the same day that Judge Dimkoff effectuated the ex parte change of custody in Defendant Baragar's favor, i.e., August 9, 2005, Defendant Sterling also personally submitted to Judge Dimkoff Defendant's Baragar's motion for an order of show cause against Plaintiff and noticed the hearing for 9:00 a.m. on the very next day, to wit, August 10, 2005.  Even though Defendant Sterling, on Defendant Baragar's behalf, had only received her sought ex parte order on August 9, 2005, Defendant Baragar's motion for an order to show cause sought to determine on the same day why Plaintiff should not be held in contempt of the circuit court family division for failure to turn over the children to Defendant Baragar by 12:40 p.m. on August 9, 2005. (Complaint at ¶¶31, 64).

> Later in the afternoon on August 9, 2005, Judge Dimkoff executed the show cause order at 2:50 p.m. on behalf of Defendant Baragar and kept as unchanged Defendant Sterling's noticed hearing date and time of August 10, 2005, at 9:00 a.m.! (Complaint at ¶¶64, 98)

> At 9:23 a.m. on August 10, 2005, Judge Dimkoff called the show cause hearing against Plaintiff.  As is apparent from the transcript of the proceeding, previously attached to Plaintiff's Complaint as Exhibit C, Plaintiff appeared without legal representation and indicated that he had not had time to secure representation for the August 10, 2005, hearing. Although Plaintiff inartfully asked to have a chance to "set aside" the

hearing until his attorney could be present, it was clear that Plaintiff requested an adjournment of the show cause hearing given the very short notice.  However, Judge Dimkoff, relying on the unlawfully furnished CPS Report by Defendant Sterling on Defendant Baragar's behest and behalf, summarily held Plaintiff in contempt and remanded Plaintiff into the custody of the Newaygo County Sheriff's Department for confinement.  As the transcript makes plain, Plaintiff's confinement in the Newaygo county jail was effectuated without <u>any</u> evidentiary hearing to establish the underlying allegations.  Judge Dimkoff then executed an order for contempt prepared by Defendant Sterling on August 10, 2005. (Complaint at ¶¶ 32, 64, 67).

At 10:00 a.m. on August 10, 2005, Judge Dimkoff signed the order regarding contempt that had been prepared and submitted for execution by Defendant Sterling; the submission and execution of the order regarding contempt represented a clear violation of Plaintiff's due process and constitutional rights. (Complaint at ¶¶ 32, 67, 97).

Based on the foregoing recounting of facts contained in Plaintiff's Complaint, it is reasonable to infer that Judge Dimkoff knew that Defendant Sterling's actions and efforts on behalf of Defendant Baragar, actively seeking, in part, Plaintiff's confinement in county jail, clearly contravened Plaintiff's due process rights (Complaint at ¶100).

Some time after August 10, 2005, but before the scheduled hearing of August 19, 2005, on Plaintiff's objection to the ex parte order of August 9, 2005, Defendant Sterling personally made Plaintiff's minor children available to Judge Dimkoff for an in-chamber interview that was not recorded.  This improper interview, in violation of due process rights, was conducted without the consent of Plaintiff, who, technically, was still the parent enjoying sole physical custody because the change of custody to Defendant Baragar had only been effectuated August 9, 2005, by way of an ex parte order subject to an automatic right for objection that Plaintiff had timely exercised and scheduled for August 19, 2005.  (Complaint at ¶¶94, 101, 102, 103, 104.)

The Complaint also alleges with specificity that on August 11, 2006, in direct congruence with the Plaintiff being incarcerated, Defendant Palka filed an additional Child Protective Services referral.  No such referral was made in the previous three months of treatment.  (Complaint at ¶82.)  The referral, contemporaneous with the guerilla removal of the children, is more than coincidental and underscores Defendant Palka's earliest instrumentality and participation in the scheme to deprive Plaintiff of his custodial rights to Nick and Emily.

11

To further underscore Judge Dimkoff's action in concert with Defendants and in furtherance of Defendants' common goal of continuing with the legal fiction of expanded parenting time and maintaining the status quo as to physical custody, derived solely on the basis of Defendant Sterling's Ex Parte Motion of August 9, 2005, and the unlawfully accompanying CPS Report (Complaint at ¶119), Judge Dimkoff admitted on the record at the August 19, 2005, hearing that he would be dictating a confidential memorandum for the potential benefit of the Michigan Court of Appeals, summarizing his interview with the minor children (Complaint at ¶¶103-104).

While it is unlikely that the Michigan Court of Appeals would ever knowingly act on a trial judge's on-the-record invitation to violate a private citizen's due process rights, Defendant Sterling's failure to object in any way to Judge Dimkoff's expressed intention to engage in improper communication with the Court of Appeals in the eventuality of an appeal by Plaintiff, especially in light of the duty imposed upon Defendant Sterling as a Michigan court officer, underscores Defendant Sterling and Judge Dimkoff's concerted action to prevent Plaintiff from gaining back custody of his children.  Indeed, from Judge Dimkoff's statement on the record and from Defendant Sterling's tacit approval, it may be reasonably inferred that the joint action that began between Judge Dimkoff and Defendants Baragar and Sterling on August 9, 2005, would continue.  Indeed, Judge Dimkoff could not have signaled to Defendant Sterling any more forcefully than by stating, in open court, that the extra-statutory way by which the circuit court had already pursued undermining Plaintiff's fundamental child custodial rights and interests would continue.

Moreover, the interview of Nicholas by Judge Dimkoff, facilitated by Defendant Sterling and sanctioned by Defendant Baragar as the new "custodial" parent, violated Plaintiff's fundamental liberty interests by unwarrantedly placing Nicholas' health and well-being at risk.  This allegation may be reasonably inferred from the May 2005 assessment of Nick by child and adolescent psychiatrist Dr. Carlos A. Marcano, M.D.  Dr. Marcano, of Pine Rest (PRCMHS), diagnosed Nick with Axis I Mood Disorder, Anxiety Disorder, and Oppositional Defiant Disorder.  Nick was also found as presenting with symptoms of depression, irritability, and low frustration.  (Complaint at ¶¶ 23-24).  Given the fragility of Nick's emotional condition, Plaintiff's fundamental and due process rights were implicated due to the fact that, as the only custodial parent, any contact with Nick, even contact undertaken by a member of Michigan's state judiciary, could be potentially harmful to Nick, especially in light of the fact that J. Dimkoff had just recently instituted an essential change of custody, i.e., through an order for "expanded parenting" for Defendant Baragar, and Plaintiff had just been jailed.  It can, therefore, be reasonably inferred that the interview

took place during a dramatic and traumatic time for Nick.  Plaintiff's consent and input was, thus, vital and fundamentally guaranteed by law (Complaint at ¶115).

In facilitating the interview without the consent and input of Plaintiff, Defendants Baragar and Sterling undermined and violated the custodial parent's fundamental right for making decisions relating to his or her child's health and medical needs.  By agreeing to interview especially Nick, Judge Dimkoff, in concert with Defendants Baragar and Sterling, also undermined and violated Plaintiff's fundamental liberty interests, especially whilst knowing that Plaintiff's earlier ex parte motion of August 1, 2005, seeking suspension of Defendant's parenting time, had been based on the allegation that Defendant had refused to comply with Pine Rest's medication protocol drawn up for Nick. (Complaint at ¶¶25-26, 115)

Judge Dimkoff further acted in concert with Defendants when, in December 2005, he accepted a letter from Defendant Palka that was addressed to the Court.  Judge Dimkoff knew that Defendant Palka was an integral part of the post-judgment child custody proceeding, having been subpoenaed by Plaintiff's counsel to provide testimony as early as November 3, 2005.  Significantly, the register of action in the Newaygo County Circuit Court proceeding, however, fails to show either an entry and/or any other proof of service that a copy of the correspondence was ever shared with and distributed to Plaintiff's trial counsel, Karen M. Boer.  Further, it was clear that Defendant Palka was not a disinterested party as she had refused to turn over to Plaintiff's state court counsel, Ms. Karen M. Boer, the great majority of her records regarding Nick on November 3, 2005. (Complaint at ¶¶ 83, 88.)

As aforementioned, the Complaint alleges that Defendant Palka deliberately withheld nearly two hundred pages of Pine Rest records on November 3, 2005, when the post-judgment trial was supposed to start (Complaint at ¶83).  As a result of Defendant Palka's open and deliberate refusal to comply with the served subpoena, the November 3, 2005, hearing (i.e., the first day of post-judgment evidentiary custody hearing) was adjourned but, while resulting in further delay to the post-judgment custody proceedings, did not result in any sanctions by J. Dimkoff against Defendant Palka (Complaint at ¶37).

The Complaint also alleges that, at the next scheduled trial date, January 26, 2006, Defendant Sterling sought and was granted expert fees in the amount of $1,600.00 from Judge Dimkoff on behalf of (Defendant Baragar's) witness Defendant Palka for having to appear at the November 3, 2005, hearing that was adjourned precisely because of her own refusal to comply with Plaintiff's counsel's issued subpoena!  Defendant Palka,

despite being present at the January 26, 2006, hearing, accepted the sanctions knowing that the adjournment had been the result of her own action.  (Complaint at ¶¶42, 84.)

Defendant Palka was also involved in providing a written affidavit that had been prepared by Defendant Sterling on Defendant Baragar's behalf, which was to be filed at the March 8, 2006, hearing, without notice to Plaintiff (Complaint at ¶¶76, 89).

**Conclusion.**

In viewing the Complaint in the light most favorable to Plaintiff, Defendant Sterling's motion for judgment on the pleadings must be denied because Plaintiff has sufficiently alleged state action.  As the Court will note below, Plaintiff's Complaint is replete with specific facts outlining a significant pattern of concerted acts by all Defendants and Judge Dimkoff that began on August 9, 2005, and spanned over one-half year.

Plaintiff's pleading also specifically alleges, directly and by the drawing of reasonable inferences, that Judge Dimkoff was unfairly and unlawfully facilitative and improperly dismissive of Defendants' collective and concerted acts of engaging in ex parte communication with the circuit court.  The only purpose of the off-the-record and ex parte communications with the Court was inarguably to undermine Plaintiff's child custody case.

Next, consistent with Proctor, supra, Plaintiff's Complaint has, first of all, identified all state actors involved in the concerted action to deprive him of fundamentally guaranteed rights.  Plaintiff has also specifically alleged what acts were contrary to state law and violative of due process.  Lastly, Plaintiff's Complaint is centered on the *behaviors* of the individual actors, private and state.

14

Plaintiff has already separately sought relief for the *outcomes* or adverse rulings of Judge Dimkoff by its request for relief from the Michigan Court of Appeals.


**C.    *Rooker – Feldman* Doctrine**

**Applicable Law.**

In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 287 (2005), the United States Supreme Court recently revisited the Rooker-Feldman doctrine and reiterated that the doctrine's scope of application was legislatively limited and not as expansive as some lower federal courts had previously perceived.  Id. at 283 ("[v]ariously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the Rooker and Feldman cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 USC ß1738").  The Court then clarified the purposes and scope of the doctrine as follows:

> The Rooker - Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

Id. at 284.  Stated differently, "[t]he Rooker – Feldman doctrine merely recognizes that 28 USC §1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, see §1257(a)."  Id. at

292, quoting Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 644

(2002).  Parenthetically, it should be noted that Defendant Sterling has partly

relied on the Sixth Circuit's interpretation of the Rooker – Feldman doctrine in

Gilbert v. Ferry, 401 F.3d 411 (6th Cir. 2005), which, however, the Sixth Circuit

ultimately vacated following the Supreme Court's decision in Exxon, supra.  See

Gilbert v. Ferry, 413 F.3d 578, 579 (6th Cir. 2005).

In determining whether the federal-plaintiff is improperly seeking appellate

review of state rulings from the federal district court, the Sixth Circuit has

instructed that courts "must pay close attention to the relief sought by the federal-

court plaintiff."  Hood v. Keller, 341 F.3d 593, 597 (6th Cir. 2003).  Consistent with

this principle, the Sixth Circuit declined to dismiss a matter under the Rooker-

Feldman doctrine when it was apparent that the case before it was not a custody

case but a §1983 damages claim.  See Holloway v. Brush, 220 F.3d 767, 777 (6th

Cir. 2000).  The Seventh Circuit's decision in Loubser v. Thacker, 440 F.3d 439

(7th Cir. 2006) is also instructive, wherein the Court held that the Rooker-Feldman

doctrine does not apply to claims that a "defendant in a civil rights suit 'so far

succeeded in corrupting the state judicial process as to obtain a favorable

judgment.'"  Id. at 441, quoting Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir.

1995).

A case that factually mirrors the present involves the Seventh Circuit's

opinion in Davit v. Davit, unpublished per curiam decision, issued April 24, 2006

(Slip Copy, 2006 WL 786723) – **Attachment 1**.  Therein, a divorce litigant

brought suit in federal court against his ex-wife, her divorce counsel, and the

state judges involved in the divorce proceeding.  While ultimately affirming the dismissal on grounds that judicial immunity robbed the matter of federal subject matter jurisdiction, the Court specifically held that the <u>Rooker – Feldman</u> doctrine did <u>not</u> bar the action for the reasons stated in <u>Loubser</u>, <u>supra</u>, and <u>Nesses</u>, <u>supra</u>.  <u>Id</u>. at slip op at 2.

**Discussion.**

In the case at bar, Plaintiff is not seeking appellate review by this Court of the state court's post-judgment child custody rulings; instead, Plaintiff is pursuing civil damages under 42 USC §1983.  Plaintiff is challenging the conduct and acts of the named Defendants herein along with their concerted action with the state court judge.  In fact, Plaintiff has already challenged various rulings of the trial court to the Michigan Court of Appeals by way of a delayed application for leave currently pending before that Court.

Moreover, those appellate issues, while based in part on the same facts as form the basis of Plaintiff's 42 USC §1983 claims, are <u>not</u> the issues before this Court.  A review of Plaintiff's delayed application for leave to appeal to the Michigan Court of Appeals reveals that Plaintiff has challenged the state court's failure to follow Michigan's Child Custody Act of 1970, MCL 722.1 *et seq.* and the trial court's erroneous application of Rule 3.207 of the Michigan Court Rules. Plaintiff has also challenged on appeal to the Michigan Court of Appeals, the trial court's various awards of attorney fees, expert costs, and sanctions.  By contrast, Plaintiff's 42 USC §1983 suit is premised on Defendant's Baragar and Defendant's Sterling submission of a falsified CPS report that formed the basis

17

for the issued August 9, 2005, ex parte order, effectively changing custody, as well as other acts of misconduct by Defendant Sterling in her representative capacity as Defendant Baragar's state court counsel.  Plaintiff's 42 USC §1983 action is also premised on the extra-judicial acts of Judge Dimkoff, which were undertaken, in part, at the request and behest of Defendant Sterling, e.g., the August 2005 contempt hearing that lacked due process and resulted in Plaintiff's confinement in county jail and the various ex parte communications with Defendants.  While the claims herein are necessarily related to the appellate issues before the Michigan Court of Appeals as they stem from the same drawn out post-judgment child custody proceeding in state court, they are not "inextricably intertwined" as contemplated by the Rooker-Feldman doctrine.  Last but not least, it should be remembered that the challenged conduct in this federal suit, e.g., Plaintiff's unlawful incarceration in county jail and Plaintiff's deprivation of his children's company and loss of parenting opportunity, cannot be redressed in state court, see *infra*.


**D.    *Younger* Abstention Doctrine**

**Applicable Law.**

As this Court has previously explained, "'[i]t is axiomatic . . . that [a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'"  Michigan Bell Telephone Co v. MFS Intelenet of Michigan, Inc., 16 F.Supp.2d 817, 827 (W.D. Mich. 1998), quoting Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992). "Abstention rarely should be invoked, because the federal

18

courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" Id., quoting Ankenbrandt, supra at (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976).  Even more importantly, the abstention doctrine may not operate in cases where an adequate state remedy is absent.  Id., citing GTE Mobilnet v. Johnson, 111 F.3d 469 (6th Cir. 1997).

**Discussion.**

In the case at bar, Plaintiff seeks civil damages under 42 USC §1983, rather than a reversal of the trial court's child custody rulings.  The sought relief is based on allegations of misconduct stemming from out-of-court dealings and communications, including those that Plaintiff has alleged transpired in the judge's chambers as well as outside of the premises of the courthouse.  With respect to Plaintiff's incarceration, the trial court's improper in-chamber interview of the children without Plaintiff's consent, Plaintiff's deprivation of the custody of his children for over nearly one year and counting, and the emotional toll suffered by Plaintiff and his children, these sufferings cannot be redressed in state court.

It is further important to note that, under Michigan child custody laws, even the child custody ruling itself, currently being appealed in state court, may be left undisturbed by Michigan's appellate courts irrespective of even acknowledged egregious conduct of the trial court judge and the herein named Defendants.  The recent unpublished Michigan Court of Appeals decision in Schroer v. Schroer, unpublished per curiam opinion of the Michigan Court of Appeals, issued December 6, 2005 (Docket No. 263422) – **Attachment 2**, effectively

underscores the absence of adequate relief even with respect to any potential

appellate correction of the inequitable and violative child custody ruling of the

Newaygo County Circuit Court:

> "In determining whether an established custodial environment
> exists, it makes no difference whether that environment was
> created by a court order, without a court order, in violation of a
> court order, or by a court order that was subsequently reversed.
> Hayes v Hayes, 209 Mich. App. 385, 388; 532 N.W.2d 190, 192
> (1995). The principal concern is not "the reasons behind the
> custodial environment, but . . . the existence of such an
> environment." Treutle v. Treutle, 197 Mich. App. 690, 693; 495
> N.W.2d 836, 838 (1992).

Id. at slip op at 2 (emphases added). In other words, the Michigan Court of

Appeals may find that the post-judgment child custody ruling was the combined

product of clear legal error, factual findings against the great weight of the

evidence, an abuse of discretion relating to the state court's dispositional ruling,

see generally Beason v. Beason, 435 Mich. 791, 798; 460 N.W.2d 207, 210

(1990), but leave undisturbed Judge Dimkoff's rulings if Plaintiff's children

effectively enjoy an exclusive established custodial environment with Defendant

Baragar at the time of its decision.

Therefore, even though Defendant Sterling's brief in support of her motion

does not discuss the adequacy or inadequacy of state remedies available to

Plaintiff, Plaintiff submits that the clear lack of such remedies render his pursuit of

the present action proper.

## **RELIEF SOUGHT**

For the foregoing reasons, Plaintiff respectfully prays that this honorable Court deny Defendant Cheryl L. Sterling's Motion for Judgment on the Pleadings under Rule 12(b)(6) of the Federal Rules of Civil Procedure and direct her to defend on the merits.

Alternatively, Plaintiff respectfully prays that this honorable Court exercise its sound discretion to hear the claims against Defendant Sterling because she was clearly inextricably linked to and highly instrumental in the above-described scheme to deprive and frustrate Plaintiff's custodial rights to his minor children. See 28 USC 1367(a) (the district court employs sound discretion in exercising supplemental jurisdiction over state claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

Respectfully Submitted,


Dated:  July 11, 2006

_____
/s/
Roger W. Boer (P10926)
Attorney for Plaintiff


Dated:  July 11, 2006

_____
/s/
Mark F. Haslem (P45432)
Co-counsel for Plaintiff


21

Dated:  July 11, 2006

_____/s/_____
Mikhail Albuseiri (P56529)
Co-counsel for Plaintiff

Dated:  July 11, 2006

_____/s/_____
Karen M. Boer (P51276)
Co-counsel for Plaintiff