UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSEPH SURMAN,

      Plaintiff,

v.

JANE BARAGAR, CHERYL L.
STERLING and KATHY PALKA,

      Defendants.
_____/

Case No. 1:06-CV-312

Hon. Richard Alan Enslen

**OPINION**

      This matter is before the Court on Defendant Kathy Palka's Motion to Dismiss and Defendant Cheryl L. Sterling's Motion for Judgment on the Pleadings. The Court has also asked the parties to brief whether claims against Defendant Jane Baragar should be dismissed for the reasons argued by Defendants Palka and Sterling (which briefs were filed on July 21, 2006, together with Defendant Jane Baragar's Motion for Judgment on the Pleadings). Oral argument on these issues is unnecessary in light of the briefing.

**BACKGROUND**

      Since these motions are based on Plaintiff Joseph Surman's Complaint, the Court takes the following recitation of the allegations from Plaintiff's Complaint. Plaintiff's Complaint was filed in this Court on May 11, 2006. Defendant Jane Baragar is Plaintiff's former wife and current opponent in custody proceedings before the Newaygo County Circuit Court. (Compl. ¶¶ 10, 27.) Defendant Palka is an employee of Pine Rest Christian Mental Health Services (a private agency, hereafter "Pine Rest") and provided psychological treatment to Plaintiff's son (N.S.) in connection with a Child Protective Services complaint allegedly made by Defendant Baragar. (Compl. ¶¶ 5, 18-

23.) Defendant Sterling is a private attorney employed by Defendant Baragar in connection with the custody proceedings. (Compl. ¶¶ 3, 28.) It further appears from the allegations that none of these Defendants are state actors and Plaintiff's claims under 42 U.S.C. § 1983 depend on his theory that these Defendants took joint action with the assigned Newaygo Family Court Judge, Judge Graydon W. Dimkoff.[1]  (Compl. ¶¶ 5(b), 113.)

Plaintiff's allegations, which for the moment must be accepted as true, tell the story of a bitter and mentally ill ex-spouse who misused the state court system to obtain unjustified relief regarding custody of Plaintiff's two children, for whom Plaintiff was the primary custodian at the time of the alleged acts. To summarize, Defendant Baragar has a history of bi-polar disorder, psychological hospitalizations, the making of false accusations of abuse, and extreme erratic and violent behaviors. (*Id.* ¶¶ 48-58.) Plaintiff was awarded custody of his two young children (N.S. and E.S.) by order of Judge Dimkoff on December 26, 2000. (*Id.* ¶¶ 12, 15.) On March 17, 2005, someone (Plaintiff suspects Defendant Baragar) contacted Michigan Child Protective Services ("CPS") and made the allegation that Plaintiff was physically abusing N.S. (*Id.* ¶ 18.) This allegation was investigated by CPS and CPS did not recommend any change in the custodial arrangement. (*Id.* ¶ 21.) CPS referred the matter to the Families First of Michigan agency ("Families First") and Families First recommended that N.S. receive professional evaluation and treatment at Pine Rest. (*Id.* ¶ 22.) The examining psychiatrist then recommended that N.S. receive a course of treatment for mood and

---

[1] Judge Dimkoff's elected position is as Newaygo County Probate Court Judge, though in this position, he is authorized to share jurisdiction with Circuit Court Judges as to family court matters, which explains references to Judge Dimkoff as a "Family Court Judge." *See* MI Admin. Order 2003-2; Mich. Comp. Laws § 600.401.

anxiety disorders and defiant behaviors. (*Id.* ¶ 24.) Defendant Baragar said that she would not cooperate with the course of treatment. (*Id.* ¶ 25.)

On August 1, 2005, a contest of *ex parte* motions started when Plaintiff moved to terminate Defendant's visitation. (Compl., Ex. B (case register), entries 123, 124.) On or about August 9, 2005, Defendant Sterling, on behalf of Defendant Baragar, filed an *ex parte* verified motion for temporary custody, change in parenting time and child support with the Newaygo County Circuit Court which stated that CPS had recently substantiated that Plaintiff was abusing his child or children. (Compl. ¶ 28 & Ex. B (case register), entries 125, 126.) The same day the Circuit Court entered a temporary visitation order required the children to reside with Baragar pending further hearing. (*Id.*) The verified motion also included a partial copy of the CPS report. (*Id.* ¶ 28.)[2] The order in question required Surman to immediately provide the children to Barager. Surman did not comply with the *ex parte* order and, when asked during an August 10, 2005 contempt hearing whether he would comply with the order to turnover the children to his ex-wife, he told Judge Dimkoff that he would not. (Compl., Ex. C (show cause hearing transcript) at 6.) This resulted in Judge Dimkoff holding Plaintiff in contempt and jailing him until he turned over the children. (*Id.*)

---

[2]Plaintiff has also made the bare legal conclusion that dissemination of the CPS report by Defendants Baragar and Sterling was a criminal violation of the Michigan Act which protects the report as confidential. (*Id.* ¶ 29; *see also* Mich. Comp. Laws § 722.633(3).) The problem with this bare legal allegation is that it assumes, without any factual support, many other factual conclusions. The alleged dissemination misdemeanor only relates to records contained within the central registry which have not otherwise been released by the Director (there is no allegation regarding these issues). (*See* Mich. Comp. Laws §§ 722.633(3), 722.627d.) Furthermore, "dissemination" in violation of the Act does not include the provision of the information to a person who under the Act is authorized to receive the information. *Zimmerman v. Owens*, 561 N.W.2d 475, 477 (Mich. Ct. App. 1997). The Act prohibits only widespread dissemination and not the placement of a report in a custody case file as to which the Circuit Court has valid use for the information. *Id.*; *see also* Mich. Comp. Laws § 722.627(g) (allowing release to a court when the information is necessary to decide an issue before the court).

Plaintiff turned over the children later that day and was released from custody. (Compl., Ex. J (Mar. 8, 2006 hearing transcript) at 26.)

An evidentiary hearing was later held on the matter at which time Judge Dimkoff determined that the testimony supported that Plaintiff was engaging in mild physical abuse (excessive physical discipline) which was unacceptable even if it was not severe enough to prompt enforcement action by Child Protective Services. (Compl., Ex. D (Aug. 19, 2005 hearing transcript) at 32-33.) Judge Dimkoff also considered the personal preferences of the children[3] (by confidential interview) and Surman's difficulties in addressing his son's defiant behaviors and mental illness. (*Id.*) Thus, he determined that Baragar should have continued visitation pending necessary psychological examinations and full trial of the matter. (*Id.*)

After that hearing, a trial of the matter was delayed amongst disputes between the parties concerning Plaintiff's failure to provide discovery, which apparently cost Defendant unnecessary attorney fees and witness fees. Plaintiff also disputed court-ordered sanctions requiring him to compensate Defendant for some of those expenses. (*See* Compl., Ex. J (Mar. 8, 2006 hearing transcript) at 15-16.) Some, but not all, of the sanctions ordered (the witness fees) were suspended for determination at a later trial, but the attorney fees sanctions ($1,000) were assessed prior to trial after sufficient hearing on the issue. (*Id.* at 15-16, 52-53.) During the hearing of March 8, 2006, Plaintiff's counsel also argued that Plaintiff was not provided sufficient due process as to the entry of the August 9, 2005 *ex parte* order. At that hearing, Judge Dimkoff explained that he thought his

---

[3]This is expressly permitted by Michigan law. Mich. Comp. Laws § 722.23(i). Although child interviews are meant to express reasonable preferences, this does not prohibit a judge from considering evidence volunteered during the interview, provided that the information is made available in some form to the parties, to satisfy due process. *See Molloy v. Molloy*, 637 N.W.2d 803, 808-10 (Mich. Ct. App. 2001), *aff'd in pert. part*, 643 N.W.2d 574 (Mich. 2002).

decisions involving temporary custody and child support were authorized by the *ex parte* order provisions of Michigan Court Rule 3.207(A) and federal law (for the purposes of protecting the safety of the children), and that Plaintiff was provided sufficient due process.[4] (Compl. ¶¶ 109, 112; Compl., Ex. J at 33-41.)  The same transcript shows that the rulings made were the product of dedicated legal research and reasoning, whether or not they were correct as a matter of Michigan law.[5]  (*Id.*)

---

[4] Judge Dimkoff's argument for his position is in fact supported to some degree by the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 65 (2000), which determined that the application of a Washington state grandparent visitation statute which did not require a showing of harm or potential harm to the children before visitation was changed, was in violation of the parent's substantive due process rights.  Judge Dimkoff's ruling takes advantage of the caveat–that state courts are acknowledged to have a strong and traditional common law interest in preventing harm to children, and sometimes must make emergency orders to preserve a child's rights–and is well reasoned in that a contrary result might have the effect of depriving these children of their constitutional rights to life and liberty.  Whatever else may be said of Judge Dimkoff's decision making, there is no suggestion of bad faith, corruption or any extra-legal agreement.

[5] Plaintiff does have ample legal ammunition in criticizing the legal decisions of Judge Dimkoff as a matter of state law.  State statute (Mich. Comp. Laws § 722.27(c)) does prohibit the state courts from changing the custody of children after a judgment awarding custody to a parent has been made and an established custodial home established, even when such is done temporarily, except upon an evidentiary hearing considering the factors pertinent under Mich. Comp. Laws § 722.23, and except when the result is supported by clear and convincing evidence.  *See Mann v. Mann,* 476 N.W.2d 439, 441-42 (Mich. Ct. App. 1991).  The same authority also prohibits re-characterization of a temporary change in custody for the purpose of avoiding the hearing, notice, findings and evidentiary requirements of the Child Custody Act of 1970, as amended.  *Id.* at 442.  It does not prohibit, however, orders temporarily changing custody due to threats of violence, and even admits that such orders may be made immediately and based on a summary process that considers affidavits and documents of the opposing sides, as opposed to a full evidentiary hearing.  *Id.* at 443 (citing cases).  While the *Mann* decision, and the pertinent statutes, do illustrate legal error as a matter of state law, which may be redressed on appeal, they do not suggest that such violations were unconstitutional or deprivations of due process.  *See Id.* at 444 (holding violations of Custody Act did not constitute violations of due process).  The *Mann* decision also supports (as it must for the necessity of a proper legal process) the issuance of a contempt order to compel compliance with a custody order, even if the issuance of the custody order was mistaken as a matter of state law.  *Id.*

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), the district court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Arrow v. Fed. Reserve Bank*, 358 F.3d 392, 393 (6th Cir. 2004); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). The allegations must be construed in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997); *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

Rule 12 requires only a "short and plain statement of the claim" and not detailed allegations. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). This standard is not empty, however. It requires more than the bare assertion of legal conclusions. *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). The complaint must give a defendant fair notice of what the claim is and the grounds upon which it rests. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). A complaint need not anticipate defenses. *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 904 (6th Cir. 2004). However, the complaint "'must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (emphasis in original, quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The district court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Although Rule 12(b)(6) and 12(c) motions do not consider matters

outside the pleadings (otherwise the Court must convert the analysis to a Rule 56 analysis), *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir. 1991), this rule does not prevent consideration of exhibits to a complaint, which are deemed part of the allegations of the suit. *See Id.*; Fed. R. Civ. P. 10(c).

Furthermore, as stated in *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) (citing cases), the standards applicable to Rule 12(c) motions for judgment on the pleadings are essentially identical to the Rule 12(b)(6) standards for dismissal due to failure to state a claim.

### LEGAL ANALYSIS

Of course, the most pertinent question as to Plaintiff's allegations is what allegations support a conclusion of state action since private conduct alone does not violate 42 U.S.C. § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding that section 1983 suit against attorney did not lie since defense counsel does not act under "state law" when performing a lawyer's traditional functions as counsel); *Kelm v. Hyatt*, 44 F.3d 415, 422 (6th Cir. 1995) (holding that ex-spouse's utilization of state procedures was not, as a matter of law, state action). In this case, the named Defendants are private parties and not state employees or agents. The only even purported basis for jurisdiction is that the Defendants acted together with Judge Dimkoff (a state actor) as to the challenged decisions in the state child custody proceedings. However, the vague characterizations of "joint conduct" within the Complaint, which do not allege either corruption or any extra-judicial agreement to act on Defendants' behalf, do not equal "joint conduct" with a state actor for the purposes of 42 U.S.C. § 1983 and the United States Supreme Court's case law. The Supreme Court in *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980) drew the pertinent dividing lines. On the one hand, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a

7

co-conspirator or joint actor with the judge." *Id.* On the other hand, when the "official act of the . . . judge was the product of a corrupt conspiracy involving bribery of the judge . . .," the other parties to the conspiracy are deemed to have acted under color of state law. *Id.*

In the present case, there is no allegation of any corrupt or untoward agreement between Judge Dimkoff and the private parties. Rather, it appears from his rulings that the only "agreement" was his agreement with the winning side on various motions before the state court. This is not the kind of "agreement" which can support a conclusion of state action sufficient for a section 1983 suit. Further, Plaintiff's reliance upon the case of *Tahfs v. Proctor*, 316 F.3d 584 (6th Cir. 2003) is likewise unavailing. That decision dismissed a suit under Rule 12(b)(6) when it determined that the very general allegations of corruption and bad faith were insufficient to meet the pleading requirements of Rule 8(a). While allegations that a judge acted in bad faith with knowledge that his action was unconstitutional may be sufficient when the other allegations of the complaint make possible those conclusions and inferences, *see Tahfs*, 316 F.3d at 591, in this case the specific allegations of the Complaint and the attached hearing transcripts (which are included by reference in the Complaint) make such legal conclusions and factual inferences wholly untenable. To the contrary, Judge Dimkoff was struggling in the thicket of child custody, knowing that he needed to make an immediate decision on competing *ex parte* and emergency motions to protect the physical and mental health of the children concerned. Judge Dimkoff's siding with Defendant Baragar in his rulings is not the kind of agreement which constitutes joint state action under 42 U.S.C. § 1983.

Therefore, Defendants' motions will be granted and Plaintiff's section 1983 claims will be dismissed with prejudice.[6]

**STATE LAW CLAIMS**

This Court also reads Plaintiff's Complaint as stating other claims under state law–*i.e.,* malicious prosecution, abuse of process, and intentional infliction of emotional distress. Regarding such claims, because the Court has determined to dismiss the federal law claims, the Court has discretion under 28 U.S.C. § 1367(c)(3) to dismiss the remaining state law claims. Upon consideration of the interest of the state courts in resolving state law issues and particularly issues regarding child custody, and the interests of justice more generally, the Court concludes that it is most appropriate to not exercise jurisdiction over the remaining state law claims. As such, Judgment will enter dismissing those claims without prejudice.

**CONCLUSION**

In accordance with this Opinion, Judgment shall enter granting Defendants' Motions, dismissing Plaintiff's federal law claims with prejudice, and dismissing Plaintiff's state law claims without prejudice.

                                              /s/ Richard Alan Enslen

DATED in Kalamazoo, MI:          RICHARD ALAN ENSLEN
     July 31, 2006                      SENIOR UNITED STATES DISTRICT JUDGE

---

[6] Dismissal of the federal claims is also supported by the *Rooker-Feldman* doctrine. *See Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002); *Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 837 (6th Cir. 2001).